BOLIN, Judge.
On May 15, 1965, plaintiff Stephenson entered into a written contract with defendant corporation in which it was agreed plaintiff, a builder, would furnish labor and supervise the work and defendant would furnish bonds and financing for five United States Army contracts. Profits from the venture were to be divided in the ratio of 65% to defendant and 35% to plaintiff. When Stephenson and his crew had completed approximately 50% of the work a dispute arose between the parties and on October 19, 1965, Mr. Howard, president of defendant corporation, took over the operation and employed the personnel necessary to complete the contracts. Plaintiff made demand on defendant for his share of the profits, which demand was rejected, and plaintiff sued for 35% of the net profits. From judgment in favor of plaintiff for $24,157.32 defendant appeals.
The trial judge dictated his reasons for judgment into the record. He found the agreement between the parties resulted in a partnership which came to an end when the work was completed and accepted. He further found Stephenson had substantially performed his part of the agreement and was prevented from completing the work because of Howard’s action in suspending the payroll and in taking over the perform- *269 anee. He examined the two audits of defendant’s accounts on the projects, which were the subject of the written agreement between the parties, and reached his conclusion with regard to the quantum awarded by taking the net profit before and after the October 18th agreement and, after deducting all expenses attributable to these periods, awarded plaintiff 35% of the remaining profit.
Appellant specifies the trial court erred in construing the relationship between the parties as a partnership; in admitting pa-rol evidence over defendant’s objection, which evidence allegedly had the effect of varying the written contract; in concluding the events of October 18th following the disagreement between the parties was due to any fault on the part of defendant; and, finally, in awarding plaintiff any of the profits attributable to work completed after he had severed relationship with defendant.
Although the written contract upon which this suit is predicated does not so state, it is undisputed that Stephenson prepared and submitted the bids to the contract officer and the contracts were awarded Mid-South as a result of these successful bids. Apparently, after the contracts were let, the parties herein entered the agreement which is the basis of this suit. Mid-South was obligated to bear all costs, expenses and liabilities incidental to or arising out of the performance of the contracts and Stephenson was to be responsible for the supervision and performance of the work contemplated, including furnishing all equipment such as trucks, ladders and other necessary items.
It is alleged the work was to be performed at England Air Force Base, Alexandria, Louisiana; Holloman Air Force Base, New Mexico; and at four different locations at Fort Leavenworth, Kansas. However, the written, agreement did not mention the England Air Force Base work. Stephenson agreed with Howard to go to Kansas and supervise the completion of the contracts there.
Plaintiff moved his family to Fort Leavenworth, employed personnel (principally painters), purchased paint and other necessary equipment to supplement that which he had furnished. Work commenced shortly after May 15th and the evidence establishes plaintiff hired from 40 to 60 painters a week, the major portion of the exterior paint work being completed from May to October 18, 1965. From the correspondence between the parties and testimony in the record it appears the work progressed rapidly, mainly as a result of plaintiff’s zeal and ability. However, Howard began experiencing financing difficulties and asked Stephenson to reduce his payroll for the reason Mr. Butte, the person to whom Howard was looking for financing, was unconvinced the contracts were going to be accomplished profitably. Plaintiff called Mr. Butte in Houston and sought to convince him the work would bring a profit. Butte went to Fort Leavenworth to inspect the progress and investigate the situation. This action on the part of Stephenson in contacting Butte evidently angered or upset Howard and precipitated a confrontation resulting in Howard’s refusing to hon- or the payroll and in taking over the entire operation. The parties gave different versions of the cause of the friction but the facts convince us plaintiff was not at fault. Howard employed the foreman on the job as supervisor and the work was completed and accepted around March, 1966. The workmen who were on the project after Stephenson was relieved testified they were able to finish the work without difficulty because the painting remaining to be done was inside work and it was accomplished during the extremely cold weather, during which time it would have been impossible to do the outside painting.
We find the suit was brought under a written contract, the provisions of which are clear. In this written agreement the parties agreed to undertake joint performance of the army contracts and to share in the percentage of profits as previously stated. Since plaintiff fulfilled his obli *270 gations of the agreement until such time as he was prevented from continuing he is entitled, under the terms thereof, to receive 35% of the profits. Louisiana Civil Code Article 1901 provides:
“Agreements legally entered into have the effect of laws on those who have formed them. They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
They must be performed with good faith.”
Two audits of defendant’s books, one performed for plaintiff and one for defendant, were introduced in evidence. There is little variance in these audits, the variance being accounted for by failure of defendant’s auditor to take into consideration the contracts for England Air Force Base and the Holloman Air Force Base, New Mexico, whereas plaintiff’s auditor considered all six of the contracts in computing total profit. In addition, defendant’s audit shows $800 more as income from one of the contracts than that of plaintiff.
The lower court apparently adopted the figures submitted by defendant’s auditor, Mr. Williams, in arriving at the net profit from the four contracts performed at Fort Leavenworth which totalled $90,186.54. Taking 35% of this amount we arrive at the sum of $31,565.30 as Stephenson’s share of that profit. Deducting $9,016.78 as cash withdrawals and supplies taken from the job gives us $22,548.51, or the amount due Stephenson for the Fort Leavenworth contracts. In addition, the written agreement, as amended, included the Holloman Air Force Base contract, the profit from which is reflected in plaintiff’s auditor’s report as $772.39. We conclude Stephenson is entitled to 35% of this profit or $270.34, which, added to the previous figure, gives us $22,818.85 or the total amount due Stephenson. We find no evidence in the record, other than testimony of plaintiff, upon which to base an award of a share in the profits from the England Air Force Base project.
The judgment of the lower court is amended to reduce the award to plaintiff from $24,157.32 to $22,818.85 and, as amended, is affirmed, costs to be borne 35% by plaintiff and 65% by defendant.